IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FRANCINE LEVASSEUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 05-001-SLR |
| | ) | |
| JO ANNE BARNHART , | ) | |
| COMMISSIONER, SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

---

Steven L. Butler, Esquire of Law Offices of Gary Linarducci, New
Castle, Delaware.  Counsel for Plaintiff.

Colm F. Connolly, United States Attorney and David F. Chermol,
Special Assistant United States Attorney, United States
Attorney's Office, Wilmington, Delaware.  Counsel for Defendant.
Of Counsel:  Donna L. Calvert, Regional Chief Counsel Social
Security Administration, Philadelphia, Pennsylvania.

---

**MEMORANDUM OPINION**

Dated: March 27 , 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I.   INTRODUCTION

Plaintiff Francine LeVasseur ("plaintiff") filed this action against defendant Jo Anne Barnhart, Commissioner of Social Security ("defendant"), on January 3, 2005.  (D.I. 2)  Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a decision by defendant denying her claim for disability income benefits under § 216(i) of the Social Security Act.  (Id.) Currently before the court are the parties' cross motions for summary judgment.  (D.I. 15, 17)  For the reasons stated below, the court will grant defendant's motion and deny plaintiff's motion.

## II.   BACKGROUND

### A.   Procedural Background

On May 29, 2002, plaintiff, a 51 year old woman with a high school education, filed an application for disability insurance benefits claiming disability since November 1, 2001. (D.I. 9 at 76)  Plaintiff listed the conditions that limited her ability to work as "rotator cuff, hbp [high blood pressure], fainting, narcolepsy."  (Id. at 92)  Plaintiff stated that the way in which she was limited was that she "cannot lift hardly anything" and that she could not use her arm.  (Id.)  After a hearing was conducted on October 23, 2003, the claim was denied by an administrative law judge (ALJ).  (Id. at 18-25)  The ALJ found the following:

1.  The claimant meets the nondisability requirements
    for a period of disability and Disability
    Insurance Benefits set forth in Section 216(f) of
    the Social Security Act and is insured for
    benefits through the date of this decision.
2.  The claimant has not engaged in substantial
    gainful activity since the alleged onset of
    disability.
3.  The claimant's left upper extremity fractures and
    alcohol abuse are considered "severe" based on the
    requirements in the Regulations 20 CFR §§
    404.1520(c) and 416.920(b).
4.  These medically determinable impairments do not
    meet or medically equal one of the listed
    impairments in Appendix 1, Subpart P, Regulation
    No. 4.
5.  The undersigned finds the claimant's allegations
    regarding her limitations are not totally credible
    for the reasons set forth in the body of the
    decision.
6.  The claimant has the following residual functional
    capacity:  to perform light work, which entails
    lifting up to 20 pounds, with frequent lifting of
    no more than 10 pounds, using the right (dominant)
    upper extremity only.  From a nonexertional
    standpoint, the claimant can use her right
    (dominant), but not her left, upper extremity for
    tasks requiring grasping, turning, and twisting,
    and for tasks involving reaching, including
    reaching overhead.  The undersigned further finds
    that when drinking, but not when sober, the
    claimant would have additional limitations on her
    ability to maintain attention and concentration,
    to maintain balance, and to be exposed to hazards
    and moving machinery (due to the likelihood of
    falling), but that these limitations do not occur
    with such frequency and/or severity as to preclude
    work at the above described residual functional
    capacity.
7.  The claimant's past relevant work as a meat
    wrapper, deli meat slicer, short order cook, and
    salad maker did not require the performance of
    work-related activities precluded by her residual
    functional capacity (20 CFR §§ 404.1565 and
    416.965).
8.  The claimant's medically determinable left upper
    extremity fractures and alcohol abuse do not
    prevent the claimant from performing her past

2

relevant work.
9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(D.I. 9 at 24) On October 29, 2004, the Appeals Council declined to review the ALJ's decision and it became the final decision of the Commissioner. (Id. at 6)

## B. Facts Evinced At The Administrative Law Hearing

Plaintiff has a high school education and last worked in November of 2001 at an Italian restaurant. (D.I. 9 at 36) Plaintiff's last job was making salads but, in the last fifteen years, she has also worked as a short order cook, as a clerk in a meat shop and a meat wrapper in a fish department at Super Fresh. (Id. at 36) As a meat shop clerk, plaintiff testified that she did some lifting of up to 50 pounds. (Id.) As a meat wrapper, she lifted up to ten pounds. (Id.)

Plaintiff testified that she shattered her left elbow and it has been operated on twice. (Id. at 37) Plaintiff claims that she has no movement of her fingers on her left hand. (Id.) Plaintiff also testified that she has arthritis in both of her knees, for which she takes Arthrotec. (Id. at 39) Dr. Elliott, plaintiff's primary care physician, performed X-rays of plaintiff's knee. (Id. at 39-40) However, at the time of the hearing, the ALJ did not have access to the X-rays purporting to demonstrate arthritis. (Id. at 40) At the hearing, plaintiff's

3

arm was in a cast. (Id. at 43)  Plaintiff also complained of
pain in her rotator cuff after surgery to her right shoulder.
(Id. at 44)  However, plaintiff stated that she had no problems
with her shoulder as of the date of the hearing.  (Id. at 44)

Plaintiff testified that she experiences pain in the left
upper extremity and her elbow every day.  (Id. at 45)  Plaintiff
has difficulties sleeping due to the discomfort in her arm.  (Id.
at 44)  She has difficulties with her personal care, but does not
need assistance.  (Id.)  She has difficulty dressing and cannot
cut meat for cooking.  (Id. at 45-46)  Describing her normal
days, plaintiff testified that she gets up, drinks ice tea and
watches the news.  (Id. at 46)  She will then read the paper,
watch TV and then take a nap.  (Id.)  Plaintiff also states she
will do some laundry and make dinner preparations.  (Id.)
Plaintiff states that she will walk up to four blocks before her
knees hurt and she experiences shortness of breath.  (Id.)  When
her arm is not in a cast, plaintiff testified that she cannot
move her left arm and experiences pain.  (Id. at 47)

Plaintiff complained of dizziness from taking Arthrotec and
sleepiness from the medications she has taken for her elbow pain.
(Id. at 46-47)  At the time of the hearing, plaintiff was only
taking Motrin for her elbow pain.  (Id. at 48)  The ALJ inquired
about plaintiff's drinking and plaintiff stated that she had a
significant problem with alcohol until the middle of 2003.  (Id.

4

at 37) Plaintiff stated that she did not drink daily and would not drink to excess, but when asked if she engaged in binge drinking, plaintiff answered "Yes." (Id. at 37)

## C. Vocational Evidence

In the Work History Report completed in June 2002, plaintiff indicated that her past jobs were as a clerk in a meat shop (1973-1996), a car sales person (1981-1986), a meat wrapper in a supermarket (1986-1989), a deli meat slicer in a meat shop (1999), a cook at a restaurant (2001) and a salad maker at a restaurant (2001). (D.I. 9 at 93) In her job as a clerk in a meat shop, plaintiff indicated that she "sliced lunch meat, wrapped fresh meat, lifted packages and boxes, [and] ran [the] register." (Id. at 102) She indicated that she walked four hours a day; stood for eight hours a day; handled, grabbed or grasped big objects for seven hours; and wrote, typed or handled small objects for eight hours a day. (Id.) Plaintiff indicated that the heaviest weight she lifted was 50 pounds and she frequently lifted 10 pounds. (Id. at 102) As a meat wrapper[1] in the fish department of a super market, plaintiff "wrapped meat and put in case; lifted ice; cooked fish; lifted fish." (Id. at 104) Plaintiff indicated she stood for six hours; handled, grabbed or grasped big objects for four hours; frequently lifted

---

[1]Plaintiff's job as a car sales person required very little lifting and very little writing. (Id. at 103)

5

under 10 pounds; and lifted no more than 10 pounds.  (Id.)  As a
deli meat slicer, plaintiff "sliced and wrapped lunch meat."
(Id. at 105)  Plaintiff indicated she stood for five hours;
handled, grabbed or grasped big objects for five hours; wrote,
typed or handled small objects for five hours; lifted less than
10 pounds frequently; and never lifted over 10 pounds.  (Id. at
105)  As a cook, plaintiff indicated she stood for five hours;
handled, grabbed or grasped big objects for one hour; wrote,
typed or handled small objects for one hour; lifted less than 10
pounds frequently and never lifted over 10 pounds.  (Id. at 106)
Finally, as a salad maker, plaintiff indicates she stood for four
hours; wrote, typed or handled small objects for four hours;
lifted 10 pounds frequently but never lifted more than 10 pounds.
(Id. at 107)

    The ALJ questioned a vocational expert, William Slaven.
(Id. at 48)  When asked to characterize the work that plaintiff
has performed in terms of both exertion and skills as would be
described in the regulations and consistent with the Dictionary
of Occupational Titles, Mr. Slaven testified that:  The job as a
meat clerk is unskilled and the physical demand is medium; a meat
packer is unskilled and the physical demand is medium, but
plaintiff testified that she performed only light work; a deli
slicer is unskilled and the physical demand is light; a cook is
semiskilled with a light physical demand; and a salad maker is

6

semiskilled with a light physical demand. (Id. at 50-51)   Mr.
Slaven testified that he could not transfer skills for
semiskilled. (Id. at 51)   When asked by plaintiff's attorney
whether these past work positions require the use of both arms,
Mr. Slaven testified that the "physical demands for these
activities are reaching, handling, frequently to constantly and
standing and walking are significant for all these jobs."   (Id.
at 52)   Plaintiff's attorney asked Mr. Slaven whether plaintiff,
based on the limitations enumerated in Dr. Patterson's residual
functional capacity report, would be able to return to any of her
past work. (Id. at 54)   Mr. Slaven answered in the negative.
(Id.)

## D.    Medical Evidence

Plaintiff had rotator cuff surgery in December 2000.   (D.I.
9 at 138)   By April 2001, plaintiff's right rotator cuff had
improved, but plaintiff was diagnosed with left shoulder
impingement syndrom.   (Id. at 136)   In May 2001, plaintiff was
placed in a right leg cast as a result of a calcaneus fracture
and right ankle sprain. (Id. at 135)   Plaintiff began treating
with Amy Elliot, M.D. in February 2002 due to complaints of right
shoulder and knee pain. (Id. at 180)   Plaintiff was hospitalized
in April 2002 due to reports of syncope[2] happening two times per
week. (Id. at 143)   However, no definitive diagnosis was offered

---

[2]Fainting.

7

to substantiate these subjective reports. (Id. at 143)  In early July 2002, plaintiff fractured her wrist by hitting it against a door frame.  (Id. at 293)  On July 20, 2002, plaintiff was treated at Wilmington Hospital for left distal humerus fracture after experiencing a fall at her home.  (Id. at 184-85, 294) Blood tests revealed alcohol ethyl intoxication.  (Id. at 211) In August 2002, plaintiff was admitted to the hospital for treatment for a fracture in her left distal humerus after falling down seventeen stairs while intoxicated.  (Id. at 236)  At her follow up visit, Dr. Patterson noted that her wound was well healed, though she complained of stiffness.  (Id. at 241)

In August 2002, a state agency physician completed a physical residual functional capacity assessment.  (Id. at 218) After a detailed review of plaintiff's medical record, the doctor concluded that plaintiff could occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, stand and/or walk for a total of 6 hours in an 8 hour work day, and was otherwise unlimited in her ability to push and/or pull.  (Id. at 219)  The doctor found limitations in plaintiff's reaching activity.  (Id. at 221)  The doctor concluded that plaintiff remained capable of a range of medium work activity.  (Id. at 225)

In October of 2002, plaintiff again sought treatment at the hospital due to an ulnar fracture resulting from tripping over her cat.  (Id. at 246)  In December of 2002, a physical residual

8

functional capacity assessment was completed for plaintiff by a state agency physician. (D.I. 266) The doctor concluded that plaintiff could occassionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for about 6 hours in an 8 hour work day, and was limited in her upper extremities. (Id. at 267) The doctor found she was limited in reaching all directions. (Id.) The doctor opined that plaintiff retained a capacity for a range of light work activity. (Id. at 267-70) In September of 2003, Dr. Patterson completed a physical residual functional capacity questionnaire. (Id. at 364) He noted that plaintiff had pain and stiffness in her left elbow. (Id. at 364) Dr. Patterson stated that plaintiff can stand for only one hour at a time, but marked that the question of how many city blocks plaintiff can walk was not applicable. (Id. at 365) Dr. Patterson also stated that plaintiff could stand or walk for only two hours total during an 8 hour work day. (Id. at 360) Dr. Patterson opined that plaintiff can rarely lift less than 10 pounds with her left arm, occasionally lift 20 pounds and frequently lift 50 pounds with her right arm. (Id. at 366) Dr. Patterson also marked that plaintiff can frequently twist, bend, and crouch; never climb ladders; and occasionally climb stairs. (Id. at 367) Dr. Patterson concluded that in her right hand, fingers and arm, plaintiff can grasp, turn, twist objects, perform fine manipulation and reach 100% of the time during an 8 hour work

9

day.  (Id. at 367)  However, with her left, plaintiff can grasp,

turn and twist objects only 50% of the time, perform fine

manipulations with her fingers 100% of the time, and reach zero

percent of the time.  (Id.)  Furthermore, Dr. Patterson noted

that plaintiff is likely to be absent from work more than four

days per month.  (Id.)  On October 29, 2003, Dr. Patterson

completed a medical certification for the Delaware Department of

Health and Social Services indicating that plaintiff was not able

to perform any type of work for more than 12 months.  (Id. at

373)

## III. STANDARD OF REVIEW

"The findings of the Commissioner of Social Security as to

any fact, if supported by substantial evidence, [are]

conclusive," and the court will set aside the Commissioner's

denial of plaintiff's claim only if it is "unsupported by

substantial evidence."  42 U.S.C. § 405(g) (2002); 5 U.S.C. §

706(2)(E) (1999); see Menswear Med. Ctr. v. Heckler, 806 F.2d

1185, 1190 (3d Cir. 1986).  As the Supreme Court has held,

> "[s]ubstantial evidence is more than a mere
> scintilla.  It means such relevant evidence
> as a reasonable mind might accept as adequate
> to support a conclusion."  Accordingly, it
> "must do more than create a suspicion of the
> existence of the fact to be established . . .
> . [I]t must be enough to justify, if the
> trial were to a jury, a refusal to direct a
> verdict when the conclusion sought to be
> drawn from it is one of fact for the jury."

Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting

10

NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300

(1939)).

The Supreme Court also has embraced this standard as the

appropriate standard for determining the availability of summary

judgment pursuant to Fed. R. Civ. P. 56:

> The inquiry performed is the threshold inquiry of
> determining whether there is the need for a trial —
> whether, in other words, there are any genuine factual
> issues that properly can be resolved only by a finder
> of fact because they may reasonably be resolved in
> favor of either party.
> Petitioners suggest, and we agree, that this
> standard mirrors the standard for a directed verdict
> under Federal Rule of Civil Procedure 50(a), which is
> that the trial judge must direct a verdict if, under
> the governing law, there can be but one reasonable
> conclusion as to the verdict.  If reasonable minds
> could differ as to the import of the evidence, however,
> a verdict should not be directed.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)

(internal citations omitted).  Thus, in the context of judicial

review under § 405(g),

> [a] single piece of evidence will not satisfy the
> substantiality test if the [Commissioner] ignores, or
> fails to resolve, a conflict created by countervailing
> evidence.  Nor is evidence substantial if it is
> overwhelmed by other evidence — particularly certain
> types of evidence (e.g., that offered by treating
> physicians) — or if it really constitutes not evidence
> but mere conclusion.

Brewster v. Heckler, 786 F.2d 581, 584 (3d Cir. 1986) (quoting

Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).  Where, for

example, the countervailing evidence consists primarily of the

claimant's subjective complaints of disabling pain, the ALJ "must

11

consider the subjective pain and specify his reasons for
rejecting these claims and support his conclusion with medical
evidence in the record." Mattullo v. Bowen, 926 F.2d 240, 245
(3d Cir. 1990).

## IV. DISCUSSION

### A. Disability Determination Process

Title II of the Social Security Act, 42 U.S.C. §
423(a)(1)(D), as amended, "provides for the payment of insurance
benefits to persons who have contributed to the program and who
suffer from a physical or mental disability." Bowen v. Yuckert,
482 U.S. 137, 140 (1987). A disability is defined as the
"inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not
less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A) (2002).

In Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999), the Third
Circuit outlined the applicable statutory and regulatory process
for determining whether a disability exists:

> In order to establish a disability under the
> Social Security Act, a claimant must demonstrate there
> is some "medically determinable basis for an impairment
> that prevents him from engaging in any 'substantial
> gainful activity' for a statutory twelve-month period."
> A claimant is considered unable to engage in any
> substantial activity "only if his physical or mental
> impairment or impairments are of such severity that he
> is not only unable to do his previous work but cannot,
> considering his age, education, and work experience,

12

engage in any other kind of substantial gainful work
which exists in the national economy."

The Social Security Administration has promulgated
regulations incorporating a sequential evaluation
process for determining whether a claimant is under a
disability.  In step one, the Commissioner must
determine whether the claimant is currently engaging in
substantial gainful activity.  If a claimant is found
to be engaged in substantial activity, the disability
claim will be denied.  In step two, the Commissioner
must determine whether the claimant is suffering from a
severe impairment.  If the claimant fails to show that
her impairments are "severe", she is ineligible for
disability benefits.

In step three, the Commissioner compares the
medical evidence of the claimant's impairment to a list
of impairments presumed severe enough to preclude any
gainful work.  If a claimant does not suffer from a
listed impairment or its equivalent, the analysis
proceeds to steps four and five.  Step four requires
the ALJ to consider whether the claimant retains the
residual functional capacity to perform her past
relevant work.  The claimant bears the burden of
demonstrating an inability to return to her past
relevant work.

If the claimant is unable to resume her former
occupation, the evaluation moves to the final step.  At
this stage, the burden of production shifts to the
Commissioner, who must demonstrate the claimant is
capable of performing other available work in order to
deny a claim of disability.  The ALJ must show there
are other jobs existing in significant numbers in the
national economy which the claimant can perform,
consistent with her medical impairments, age,
education, past work experience, and residual
functional capacity.  The ALJ must analyze the
cumulative effect of all the claimant's impairments in
determining whether she is capable of performing work
and is not disabled.  The ALJ will often seek the
assistance of a vocational expert at this fifth step.

Id. at 427-28 (internal citations omitted).  If the ALJ finds

that a claimant is disabled or not disabled at any point in the

13

sequence, review does not proceed to the next step. See 20 C.F.R. § 404.1520(a) (2002).

## B. Application of the Five-Step Test

In the present case plaintiff contests the ALJ's finding that plaintiff can return to her past relevant work. Specifically, plaintiff challenges the ALJ's finding that she has a residual functional capacity ("RFC") to perform her past work. Further, plaintiff challenges the ALJ's failure to give proper weight to the opinion of plaintiff's treating physician and failing to include all the treating physician's limitations in the RFC assessment.

The ALJ found that claimant retained a residual functional capacity to "perform light work, which entails lifting up to 20 pounds, with frequent lifting of no more than 10 pounds, using the right (dominant) upper extremity only. From a nonexertional standpoint, the claimant can use her right (dominant), but not her left, upper extremity for tasks requiring grasping, turning, and twisting, and for tasks involving reaching, including reaching overhead." (D.I. 9 at 22-23) As a result of this RFC determination, the ALJ concluded that plaintiff was able to perform her past work as a meat wrapper, deli meat slicer, short order cook and salad maker, none of which require lifting of more than 10 pounds. (Id. at 23) While these jobs do require some handling, grasping, and/or writing, they are not precluded

14

because plaintiff still retains the ability to perform these functions with her right (dominant) hand.  (Id. at 23)

## 1.  ALJ's determination of past relevant work

The ALJ can determine if the plaintiff retains the capacity to do a past relevant job:  (1) based on a generic occupational classification of the job; (2) based on whether claimant retains the capacity to perform the particular functional demands and job duties as the claimant actually performed it; or (3) based on whether the claimant retains the functional demands and job duties of the job as performed in the national economy.  S.S.R. 82-61.  The ALJ in the present case made a finding that plaintiff could perform her past work based on her descriptions of her past occupations.  (D.I. 9 at 23)  The claimant is the primary source for vocational documentation and the plaintiff's statements regarding past work "are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 123 (3d Cir. 2000).

Plaintiff asserts that the ALJ's determination is contrary to the testimony of the vocational expert.  When asked whether plaintiff's past jobs would require the use of both arms, Mr. Slaven answered:  "The significant physical demands for these activities are reaching, handling, frequently to constantly and standing and walking are significant for all these jobs, for the

15

two physical demands that stick out most as far as repetition."
(D.I. 9 at 52)  The vocational expert did not testify that both
arms were required for the past jobs.

Plaintiff argues that Mr. Slaven, when asked the
hypothetical of whether plaintiff could resume her past jobs
based on the limitations set out in Dr. Patterson's RFC
determination, said no.  Mr. Slaven based this decision on
several facts:  (1) all the jobs require standing throughout the
work day and Dr. Patterson limited plaintiff to less than two
hours; (2) lifting 50 pounds with one arm continuously throughout
a work day is very difficult; (3) reaching and handling are
significant for all these jobs; and (4) being absent for more
than four times per month would eliminate all work.  (Id. at 55)
All of these limitations are included in Dr. Patterson's report
and the ALJ independently examined and rejected each of these
limitations, as discussed below.  As a result, the ALJ properly
did not credit the weight of Mr. Slaven's answer to the
hypothetical question.  Mr. Slaven also pointed out that lifting
up to 50 pounds is a very difficult feat for using only one arm,
which Dr. Patterson's report allowed plaintiff, suggesting
internal inconsistencies in Dr. Patterson's report.  (Id. at 55)

## 2.   Weight given to treating physician

"A cardinal principle guiding disability eligibility
determinations is that the ALJ accord treating physicians'

16

reports great weight." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). "When a treating source's opinion on the nature and severity of a claimant's impairment is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record,' it will be given 'controlling weight.'" Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001). "Where . . . the opinion of a treating physician conflicts with that of a non-treating physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Id. (citing Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). "The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled." Id. If the ALJ chooses to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence." Plummer, 186 F.3d at 429.

Plaintiff contends that the ALJ improperly ignored limitations asserted by Dr. Patterson. The ALJ did discuss the portions of Dr. Patterson's report that he rejected and why they were rejected. The elements of Dr. Patterson's report that the ALJ discredited were:

> That the claimant could stand/walk and sit for less
> than two hours in an eight hour day; that she could

17

only occasionally climb stairs; and that the claimant
could be expected to be absent from work due to her
impairments or treatment more than four times a month.

(D.I. 9 at 22)   The ALJ stated that these assertions were

"totally unsupported by any objective findings."   (Id.)   The ALJ

discussed the complained of knee problem earlier in the opinion

and concluded that it was not significant to her disability.

(Id. at 20)   Specifically, the ALJ found that "the claimant

complained of knee pain in August 2003, and x-rays showed slight

degenerative changes in the knees (Exhibit 18F).   Later in the

same month, however, the claimant's knee pain had resolved, and

her degenrative joint disease was considered to be asymptomatic

(Exhibit 19F)."   (Id. at 20)   Because the only disability the

ALJ considered was plaintiff's upper left extremity, the ALJ

found that the limitations on plaintiff's ability to walk, stand

and climb stairs were unsupported by the medical evidence.

Furthermore, the two state agency doctors found no such

limitations in plaintiff's RFC.   Because Dr. Patterson's opinion

was unsupported by the objective medical evidence and the opinion

was inconsistent with other medical opinions, the ALJ was not

compelled to give those portions of Dr. Patterson's report

controlling weight.   See Jones v. Sullivan, 954 F.2d 125, 129 (3d

Cir. 1991) (finding the ALJ correctly determined that the

opinions of plaintiff's treating physician were not controlling).

The ALJ's opinion was supported by substantial evidence and the

18

ALJ adequately explained the reasons for the weight afforded the various medical evidence.

## V.   CONCLUSION

For the reasons stated herein, the court denies plaintiff's motion for summary judgment and grants defendant's cross-motion for summary judgment.  An order consistent with this memorandum opinion shall issue.

19